**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAWN WHITENIGHT, | ) | Civil Action No. 2: 16-cv-00552 |
| | ) | |
| Plaintiff, | ) | United States District Judge |
| | ) | Arthur J. Schwab |
| v. | ) | |
| | ) | United States Magistrate Judge |
| THOMAS ELBEL and DEPUTY | ) | Cynthia Reed Eddy |
| NUNLEY, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the pending Motion to Dismiss (ECF No. 35) filed by Defendants be granted in part and denied in part.  It is further recommended that pursuant to the authority granted courts by 28 U.S.C.§§ 1915(e)(2) and 1915A, Plaintiff's Equal Protection and Common Law Civil Conspiracy claims be dismissed for failure to state a claim upon which relief can be granted.

### II.    REPORT

#### A.    Procedural Background

Plaintiff, Shawn Whitenight, is a state prisoner currently incarcerated at the State Correctional Institution – Greene ("SCI-Greene") located in Waynesburg, PA.  Named as defendants are Thomas Elbel, Warden of the Jefferson County Jail, and Jacob Nunley, Jefferson County Deputy Sheriff.  Both Defendants are sued in their individual and official capacities.[1]

---

[1]      Because Plaintiff has sued Defendants in both their individual and official capacities, the claims against them in their official capacities are treated as claims against the entity (Jefferson County) itself.  The United States Supreme Court has stated than an official capacity claim is simply "another way of pleading an action against an entity of which an officer is an agent.'  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit, is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v.*

Plaintiff initiated this action on May 4, 2016, by submitting a Complaint with a Motion for Leave to Proceed *in forma pauperis*. (ECF No. 1). The Motion was granted and the Complaint was filed on May 9, 2016. (ECF Nos. 2, 3). Defendants filed a Partial Motion to Dismiss. (ECF No. 17). In response to the motion, Plaintiff filed an Amended Complaint and then attempted to file a Supplemental Complaint (ECF No. 27, 29). Based on the Court's order to file one complaint, Plaintiff filed a Second Amended Complaint on November 2, 2016, which remains the operative pleading from Plaintiff. (ECF No. 34). Defendants filed the instant Motion to Dismiss and brief in support thereof (ECF Nos. 35 and 36), Plaintiff filed a response, Declaration, and brief in opposition (ECF Nos. 41, 42, and 43), Defendants filed a Reply Brief (ECF No. 44), and Plaintiff filed a Sur-Reply. (ECF No. 46). The matter is ripe for disposition.

### B.    Factual Background

All of Plaintiff's claims arise from events which allegedly occurred while Plaintiff was a pre-trail detainee confined at the Jefferson County Jail.[2]  Distilled to its essence, the case involves the alleged breach of Plaintiff's confidential communications with his criminal defense attorney.

Plaintiff makes numerous allegations that the correction officers at Jefferson County Jail regularly searched prisoners' documents, including litigation materials, and eavesdropped on

---

*Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Sox. Servs.,* 436 U.S. 658, 690 n. 55 (1978)).

[2]    Plaintiff was a pretrial detainee, from December 17, 2013 until May 15, 2014. His status changed to that of a convicted prisoner on May 16, 2014, when he was sentenced by the Court of Common Pleas of Jefferson County. Plaintiff was physically transferred into state custody on June 3, 2014. His status, however, is not relevant for purposes of ruling on the instant motion.
    *See*    http://usjportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-33-CR-0000001-2014.

attorney-client jail visits. Staff also opened and read his attorney-client mail. Plaintiff admits that these claims are time barred, but offers them as proof of a policy or practice of jail staff under Warden Elbel. (ECF No. 34, ¶¶ 8-19).

According to the Second Amended Complaint, on May 12, 2014, Plaintiff was transported to the Jefferson County Courthouse for jury selection in his criminal trial. In preparation for the transport, while at the Jefferson County Jail, Plaintiff was strip searched for contraband and the materials which he was taking to court were searched by unnamed officers. Plaintiff alleges that the materials searched included attorney/client privileged documents and attorney work product documents.

Defendant Deputy Sheriff Nunley transported Plaintiff from the jail to the courthouse. As they drove to the courthouse, Nunley allegedly read through the documents Plaintiff was taking to the courthouse. While reading the documents, Nunley turned up the volume on the van radio and then placed a call on his cell phone to an unknown person.

Once in court, the Jefferson County District Attorney provided Plaintiff's defense attorney additional discovery which was a compact disc containing recordings of Plaintiff's jail telephone calls. Three days later, Plaintiff was advised by his defense attorney that the CD of recorded calls included calls between Plaintiff and his defense attorney and that the District Attorney had listened to the calls.[3] Plaintiff avers that the attorney telephone calls should not have been recorded as he previously had provided notification to the jail of his defense attorney's

---

[3]    However, according to the no-merit petition which was filed by Plaintiff's PCRA counsel, a portion of which is attached as an exhibit to the Amended Complaint, the District Attorney was <u>not</u> privy to the taped conversations and was never informed of the content of the taped phone conversations. (ECF No. 34-3).

telephone number. Plaintiff was informed that only Defendant Elbel had access to the recordings of the inmate telephone calls.

After it was discovered that Plaintiff's attorney jail calls had been recorded, the District Attorney and Plaintiff's defense attorney requested to have the prosecution of the case transferred to the Office of the Attorney General. The trial judge rejected this request.

The next day, on May 16, 2014, Plaintiff entered a plea of guilty after being told by his attorney that "they're corrupt, they're out to get you and they're covering up their illegal actions." *Id.* at ¶¶ 53-54. According to the Second Amended Complaint,

> Plaintiff, uneducated in the law, unable to speak freely due to the known wiretapping, had no choice known and was advised by [his defense attorney] I'd receive medical care upon accepting the plea agreement. The prosecution knew our complete defense and conversations of the case. Approx. [sic] 4:30 P.M., Plaintiff was rushed to the courthouse to enter the plea on May 16th, 2014.

*Id.* at ¶ 54. Plaintiff also alleges that "it was known that a[n] informal practice, policy, pattern or custom of illegally recording and using attorney-client conversations for the prosecution" existed at the Jefferson County Jail. (ECF No. 34, ¶ 42).

Through the Second Amended Complaint, Plaintiff also alleges that Warden Elbel delayed necessary medical treatment in retaliation "for discovery of the illegal wiretapping and to avoid financial obligation of treatment." (ECF No. 34, ¶ 67; ECF No. 43, ¶ I).[4]

Plaintiff asserts a variety of claims against both Defendants based on alleged violations of his civil rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. He also asserts claims against Warden Elbel under federal and state criminal

---

[4]     Plaintiff's claims of retaliation relating to the delay / denial of medical care are the subject of a separate lawsuit filed with this Court at *Whitenight v. Elbel, et al.*, 2:16-cv-646; therefore, this retaliation claim will not be addressed in this action.

statutes, and Article 1, § 8 of the Pennsylvania Constitution. Additionally, he appears to be stating a claim against Warden Elbel for common law civil conspiracy based on an alleged scheme to cover-up the illegal wiretapping and to coerce a plea from Plaintiff. (ECF No. 34, ¶¶ 46-71, ECF No. 41, ¶ 10).

According to the Second Amended Complaint, Plaintiff has requested several Federal and State agencies to investigate and prosecute his criminal allegations against Defendants and other alleged co-conspirators; however, none has done so. He states that the lack of criminal prosecution against the Defendants was discrimination and a denial of "equal protection due to being a convicted felon and in prison," and that he continues "to be violated by the illegal wiretapping and alleged cover-up and conspiracy." (ECF No. 34, ¶¶ 69-71).

Plaintiff claims Defendants' actions have caused him mental anguish and emotional distress. As relief, he seeks injunctive and declaratory relief, compensatory damages, nominal damages, and punitive damages.

C.     **Standard of Review**

1. Pro Se Litigants

*Pro se* pleadings are held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). In other words, if the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax

and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Motion to Dismiss Pursuant to Rule 12(b)(6)

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v.*

*Great Bay Casino Corp.,* 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

In ruling upon a motion to dismiss, a district court generally is "not permitted to go beyond the facts alleged in the [c]omplaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424–25 (3d Cir. 1997). "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (considering a contract attached as an exhibit to a motion to dismiss because the complaint's claims were based upon the contract). A court may also consider "legal arguments presented in memorandums or briefs and arguments of counsel." *Pryor v. NCAA*, 288 F.3d 548, 559 (3d Cir. 2006). "The court is not permitted to look at matters outside the record; if such matters are considered, the [Federal Rule of Civil Procedure] 12(b)(6) motion to dismiss is, by the express terms of [Federal Rule of Civil Procedure] 12(b), converted into a motion for summary judgment." *Id.* at 560.

Plaintiff has submitted a "Declaration In Support of Plaintiff's Motion in Opposition." (ECF No. 42). Because Whitenight is a prisoner appearing *pro se*, the Court has treated the

factual allegations contained in the Declaration as though they were supplements to his complaint. *See Lewis v. Att'y Gen. of U.S.*, 878 F.2d 714, 722 (3d Cir. 1989). Therefore, the presence of this document in the record does not require that the pending motion to dismiss under Rule 12(b)(6) be converted to a motion for summary judgment under Rule 56.

3.    <u>Screening Pursuant to 28 U.S.C. §§ 1915 and 1915A</u>

Whitenight is a state prisoner who has been granted leave to proceed in this case *in forma pauperis.* This Court has a statutory responsibility, given that IFP status and the fact that Whitenight is a prisoner, to review the Second Amended Complaint to determine if it states a valid claim for relief. The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B); 1915A(a).

Moreover, not only is a court permitted to *sua sponte* dismiss a complaint but it is required to do so by the mandatory language of "the court shall dismiss" utilized by Section 1915(e)(2); *see also* 28 U.S.C. § 1915A(b) ("On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim . . . ."). In performing a court's mandated function of *sua sponte* reviewing complaints under 28 U.S.C. §§ 1915(e) and 1915A, a federal district court applies the same standard as applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Powell v. Hoover*, 956 F. Supp. 565, 568 (M.D. Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)).

**D.    Discussion and Analysis**

   1. Mootness

The Court must begin by addressing whether this case, or any aspect of the relief requested by Plaintiff, has become moot. *See Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.,* 336 F.3d 211, 216 (3d Cir. 2003) (explaining that the issue of mootness must be addressed *sua sponte* because it affects the court's Article III jurisdiction). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 698-99 (3d Cir. 1996).

The events giving rise to this lawsuit occurred when Plaintiff was a pretrial detainee confined at the Jefferson County Jail.  Upon the imposition of his sentence, Plaintiff was committed to the custody of the Pennsylvania Department of Corrections and eventually transferred to SCI Greene.

   a.    *Request for Injunctive and Declaratory Relief.* "In general, an inmate's claim for injunctive and declaratory relief becomes moot on his release from prison."  *Cobb v. Yost,* 342 F. App'x 858, 859 (3d Cir. 2009); *see also Sutton v. Rasheed,* 323 F.3d 236, 248 (3d Cir. 2003) (as amended) (May 29, 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.").[5]  Accordingly, Plaintiff's requests for injunctive and declaratory relief are moot by virtue of his release from Jefferson County Jail, and he does

_____

[5]    Plaintiff's claims for injunctive and declaratory relief do not fit within the "narrow exception," which depends on whether "his case presents a question 'capable of repetition yet evading review.'"  *Cobb v. Yost,* 342 F. App'x 858, 859 (3d Cir. 2009) (quoting *Abdul-Akbar v. Watson,* 4 F.3d 195, 206 (3d Cir. 1993)).  Plaintiff claims that he is entitled to injunctive relief because he may be "re-incarcerated at the Jefferson County Jail" and have "interaction with the defendants."  (ECF No. 34, at ¶ 151).  However,"[s]peculation that [Plaintiff] could return to [Jefferson County Jail] does not overcome the mootness doctrine."  *Cobb,* 342 F. App'x at 859.

not have standing under Article III of the Constitution to assert such claims on behalf of other inmates confined at Jefferson County Jail.

It is therefore respectfully recommended that Defendants' request to dismiss Plaintiff's request for injunctive and declaratory relief be granted.

b. *Request for Monetary Damages*. Plaintiff is also seeking monetary damages "for mental anguish and emotional distress." However, § 803(d)(e) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), prohibits compensatory damages for mental or emotional injury absent allegations of physical injury." *Doe v. Delie,* 257 F.3d 309, 335 n.3 (3d Cir. 2001) (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000)). It is therefore respectfully recommended that Defendants' request to dismiss Plaintiff's request for injunctive and declaratory relief be granted.

c. *Request for Nominal Damages and Punitive Damages*. Plaintiff is also seeking nominal damages and punitive damages. Section 1997(e)(e)'s requirement that a prisoner demonstrate physical injury before he can recover for mental or emotional injury applies <u>only</u> to claims for compensatory damages. Claims seeking nominal or punitive damages are typically not "for" mental or emotional injury but rather "to vindicate constitutional rights" or "to deter or punish egregious violations of constitutional rights," respectively. *Allah*, *supra*, at 252. Therefore, "a claim for nominal damages in conjunction with one for punitive damages is enough to avoid mootness." *Freedom from Religion Found, Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 486 (3d Cir. 2016).

2. <u>Plaintiff's Section 1983 Claims</u>

Whitenight claims that Defendant Elbel violated his constitutional rights under the First,

Fourth, Fifth, Sixth, and Fourteenth Amendments when he, *inter alia,* recorded and eavesdropped on Whitenight's attorney-client telephone calls, failed to provide reasonable confidential areas for attorney-client communications, intentionally invaded Whitenight's attorney-client privacy, improperly gathered information, illegally wiretapped his attorney calls, and illegally distributed the illegal wiretaps.

Similarly, Whitenight claims that Defendant Nunley violated his constitutional rights under the First, Fourth, and Fourteenth Amendments when he, *inter alia*, intentionally read Plaintiff's attorney-client correspondence and attorney work product documents, improperly gathered information, conducted an "unreasonable search" and disclosed the results of that search; and intentionally violated Whitenight's attorney-client privacy. (ECF No. 34, ¶¶ 74 – 85.)

*Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court concluded that a plaintiff may not recover damages under Section 1983, if doing so would necessarily impugn the validity of plaintiff's prior conviction. Specifically, the Court held:

> [In] order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . ., or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under Section 1983.

*Id*. at 486-87. *Heck* also announced a separate rule of deferred accrual, holding that "a Section 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does

not accrue until the conviction or sentence has been invalidated." *Id.* at 489.    To the extent that a plaintiff attempts to challenge his conviction and/or sentence, his sole federal remedy for challenging the fact or duration of his confinement is by way of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 93 (1973); *see also Torrence v. Thompson*, 435 F. App'x 56 (3d Cir. 2011) (per curiam) (unpublished).

Considering *Heck* and summarizing the interplay between habeas and § 1983 claims, the Supreme Court explained that, "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).  As our court of appeals has further explained:

> [W]henever the challenge ultimately attacks the 'core of habeas' - the validity of the continued conviction or the fact or length of the sentence – a challenge, however denominated and regardless of the relief sought, must be brought by way of habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

*Telepo v. Martin,* 359 F. App'x 278, 280 (3d Cir. 2009) (per curiam) (unpublished) (quoting *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002)).

The existence of a valid conviction, however, does not necessarily preclude all Section 1983 claims.[6]  For this reason, the Court of Appeals for the Third Circuit instructs that district courts must undertake a fact-intensive inquiry with regard to each claim raised by the plaintiff and determine whether success on that claim would necessarily impugn the integrity or imply the

---

[6]    Claims found not to be barred by *Heck* include claims of unreasonable search and seizure, excessive force, and false arrest or imprisonment.

invalidity of the plaintiff's criminal conviction. *Flood v. Schaefer,* 240 F. App'x 474, 476 (3d Cir. 2007) (per curiam) (unpublished); *Gibson v. Superintendent, N.J. Dept. of Law*, 411 F.3d 427, 450 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010).

In this case, the Second Amended Complaint does not reflect that Plaintiff's convictions or sentences have been reversed or invalidated. Defendants therefore argue that, under *Heck*, Plaintiff's claims are not ripe until his conviction is overturned and should be dismissed until that time. Even though Plaintiff has at least pursued the reversal of his conviction through the PCRA, he counters that upon commencement of trial in this case, he will waive his rights to any availability of using the evidence in this case to overturn or invalidate his sentence. The only exception is Plaintiff's ability to petition the court to lower his long probation upon a showing of goodtime as available under his current sentence. (ECF No. 43, at 18). He also states that he has not brought an action against the DA or Commonwealth, nor has he requested release. Although Whitenight states that he has abandoned his attempts to overturn his conviction, he continues to claim that his plea was coerced. *Id.* at 18, 19. The Court rejects Plaintiff's arguments on this point. The requirements of *Heck v. Humphrey* are not optional at the Plaintiff's whim, "however denominated and regardless of the relief sought." *Telepo*, 359 F. App'x at 280.

*First, Sixth, and Fourteenth Amendments Claims*

Plaintiff asserts that Defendants' actions resulted in:

(i) the denial of effective assistance of counsel in violation of his Sixth Amendment right to counsel. *See United States v. Henry*, 447 U.S. 264, 295 (1980) ("the Sixth Amendment, of

course, protects the confidentiality of communications between the accused and his attorney." (Rehnquist, J., dissenting)); and

(ii) coerced him into pleading guilty because the prosecution listened to his jail telephone conversations with his attorney and had information which was improperly gleaned from eavesdropping and reading of his attorney file, in violation of his First and Fourteenth Amendment rights.

The Court finds that these claims go to the core of Plaintiff's convictions and thus, are barred under *Heck*.

*Fourth Amendment Claims*

However, Plaintiff's claims under the Fourth Amendment require additional scrutiny. The Court in *Heck* cautioned that Fourth Amendment search claims may proceed under §1983, even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the plaintiff's conviction because of doctrines like independent source and inevitable discovery. *Heck*, 512 U.S. 486-87. However, the plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, that does not encompass the 'injury' of his conviction and sentence. *Id.* at 486, n. 7. *See Murray v. United States*, 487 U.S. 533, 539 (1988); *Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986); *Smith v. Susquehanna University*, 2015 WL 12791753 (M.D. Pa. Mar. 4, 2015); *Clouser v. Johnson*, 40 F.Supp.3d 425 (M.D. Pa. 2014).

It is clear that "the Fourth Amendment governs not only the seizure of tangible items, but extends as well to the recording or oral statement." *Katz v. United States*, 389 U.S. 347 (1967).

The constitutional question is whether the person invoking its Fourth Amendment protection can claim a justifiable or reasonable expectation of privacy and that his "subjective expectation of privacy is one that society is willing to recognize as reasonable." *United States v. McKinnon*, 985 F.2d F.2d 525 (11th Cir. 1993). Confidential attorney-client communications are the foundation of the attorney-client privilege. The privilege recognizes that "sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyers' being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Courts have held that prisoners generally have no reasonable expectation of privacy in <u>non-attorney</u> telephone calls once a prisoner has received notice of monitoring and recording of such calls. *See Thomas v. Wilbert*, No. 09-4796, 2011 WL 91001 (D.N.J. Jan. 11, 2011) (collecting cases).

The Court finds that Plaintiff has at least stated a plausible claim under the Fourth Amendment as to eavesdropping on meetings with his attorney, the recording of telephone calls with his attorney, and the reading of his confidential attorney-client communications. During discovery, the parties can explore whether there were in fact breaches in the attorney-client privilege, and if so, whether such breaches were intentional, and whether such breaches caused Whitenight actual, compensable injury, that does not encompass the "injury" of his conviction and sentence. Therefore, it is respectfully recommended that Defendants' Motion to Dismiss Plaintiff's Fourth Amendment claims be denied.

For these reasons, it is respectfully recommended that Defendants' request to dismiss Plaintiff's First, Sixth, and Fourteenth Amendments claims be granted and these claims be dismissed, without prejudice, to be pursued  after a successful challenge to the underlying conviction. It is further recommended that Defendants' request to dismiss Plaintiff's Fourth

Amendment claims be denied.

*Fifth Amendment Claims*

In Paragraph 97 of the Second Amended Complaint, Plaintiff alleges that Warden Elbel's "improper evidence gathering" violated Plaintiff's "rights and constitutes self-incrimination under the Fifth Amendment to the United States Constitution." The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court stated:

> The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.

The Second Amended Complaint contains no allegation that Whitenight was subjected to a custodial interrogation or that Warden Elbel compelled Plaintiff to take any action against his own interests. Therefore, the Fifth Amendment's prohibition against self-incrimination does not apply.

Likewise, the Fifth Amendment's right to procedural due process does not apply because "the Fifth Amendment [only] applies to actions of the federal government." *B & G Const. Co. v. Dir., Office of Workers' Comp. Programs,* 662 F.3d 233, 246 n. 14 (3d Cir. 2011); *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n. 11 (3d Cir. 2005). It is not disputed that Defendants are county actors; they are not federal actors. As such, the Fifth Amendment is not applicable and this claim should be dismissed with prejudice. Because there are no additional facts which Whitenight could plead to cure this deficiency, any amendment of this claim would be futile. Plaintiff, therefore, should be denied leave to amend this claim.

*Equal Protection Claim*

Plaintiff makes a passing reference to Equal Protection seemingly implying that he has been denied Equal Protection because no law enforcement agency would agree to prosecute Defendants at his behest "due to being a convicted felon and in prison." (ECF No. 34, at ¶ 69, 70). Given his lack of specificity in asserting this point, the Court finds that this claim fails to state a claim as a matter of law as Plaintiff has not alleged that Defendants engaged in intentional or purposeful discrimination or that he was treated differently by Defendants than similarly situated persons on the basis of his race, nationality, or gender with regard to the alleged misconduct. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (neither prisoners nor indigents are suspect classes). Further, it is worth noting that a private citizen lacks a judicially cognizable interest in the prosecution or non- prosecution of another.

Because there are no additional facts which Whitenight could plead to cure these deficiencies, any amendment of this claim would be futile. Plaintiff, therefore, should be denied leave to amend this claim.

3.     Claims Alleging Violation of Article 1, Section 8 of the Pennsylvania Constitutional

Plaintiff alleges that Warden Elbel violated Article 1, Section 8 of the Pennsylvania Constitution, causing him to lose in excess of $10,000. To the extent that Plaintiff is pursuing a pendent state constitutional claim for damages, it is clear that this claim fails since "Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages due to a federal constitutional violation." *Gary v. Pennsylvania Dept. of Labor &*

*Indus.*, 2014 WL 2720805, at *10 (M.D.Pa. June 13, 2014). This court has consistently held that "there is no private cause of action for monetary damages for violations of Pennsylvania constitutional rights." *Williams v. City of Johnstown*, 2016 WL 1069100, at *5 (W.D.Pa. Mar. 17, 2016); *Spell v. Allegheny County* , 2015 WL 1321695, at *4 (W.D.Pa. Mar. 24, 2015); *Yunik v. Wetzel*, 2014 WL 5426198, at* 8 (W.D. Pa. Oct 22, 2014). *See also Anderson v. Dauphin County Adult Probation Office*, 2016 WL 769278, at * 6 (M.D.Pa. Jan. 25, 2016)(collecting cases holding that there is no private cause of action for damages under the Pennsylvania constitution). Indeed, "the prevailing view in this circuit is that Pennsylvania does not recognize a private right of action for damages in a suit alleging a violation of the Pennsylvania constitution." *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 (3d Cir. 2008).

Therefore, it is respectfully recommended that Plaintiff's claims under Article 1, Section 8 of the Pennsylvania Constitution be dismissed, with prejudice. Because there are no additional facts which Whitenight could plead to cure this deficiency, any amendment of this claim would be futile. Plaintiff, therefore, should be denied leave to amend this claim.

### 4. Claims Alleging Violations of Federal and State Criminal Statutes

The Second Amended Complaint also alleges that Warden Elbel violated multiple federal and state criminal statutes. A criminal statute does not give rise to civil liability, unless the statute expressly provides a private cause of action. *Simpson, Jr., v. The City of Coatesville*, No. 12-4803, 2015 WL 7251546 at *6 (E.D. Pa. Nov. 17, 2015) (citing *Frank B. Fuhrer Wholesale Co. v. MillerCoors* LLC, No. 13-1155, 2013 WL 5875819 *6 (W.D. Pa. Oct. 30, 2013)). The various statutes alleged to have been violated are discussed seriatim.

a. *The Federal Wiretap Act, 18 U.S.C. § 2510, et seq.*

In Paragraphs 104 – 114 of the Second Amended Complaint, Plaintiff alleges that Warden Elbel violated the Federal Wiretap Act by recording Plaintiff's jail telephone calls with his criminal defense attorney.   Title III of the Act provides a civil remedy when wire, oral, or electronic communications are unlawfully intercepted.   18 U.S.C. §§ 2511(1)(a); 2520(a).   It is not unlawful, however, for a person acting under color of law to intercept such a communication where one of the parties has given prior consent.   18 U.S.C. § 2511(2)(c).   Generally, where inmates have notice that their telephone calls are being monitored and recorded there is no violation of the Wiretap Act.  *Bansal v. Pavlock*, 352 F. App'x 611, 614 (3d Cir. 2009); *United States v. Hodges*, 85  F. App'x 278 (3d Cir. 2003).

Defendants argue that monitoring / recording inmate calls is permissible under 18 U.S.C. § 2510(5)(a)(ii), which excludes from proscriptions of Title III the interception of communications used by an "investigative or law enforcement officer in the ordinary course of his duties."  (ECF No. 36 at 6) (internal citations omitted). It appears that as part of managing the day-to-day operations of Jefferson County Jail, Warden Elbel would fall within the definition of an "investigative or law enforcement officer(s)" and the practice of monitoring inmates' personal calls would be within the ordinary course of the prison officials' duties.  However, the practice of monitoring inmate / attorney calls involves different considerations.   The cases cited by Defendants provide no guidance as the facts of each of those cases are distinguishable from the facts of this case.   Specifically, in each of those cases, none of the recorded calls involved attorney-client privileged communications.

Plaintiff has at least pleaded a plausible claim under the Federal Wiretap Act. While discovery may reveal that the Act is inapplicable, at least at this juncture, this claim should be pursued through discovery. Therefore, it is respectfully recommended that Defendants' request to dismiss Plaintiff's claims under the Federal Wiretap Act be denied.

> b.   *The Stored Communications Act, 18 U.S.C. § 2701, et seq.*

In Paragraphs 115 – 123 of the Second Amended Complaint, Plaintiff alleges that Warden Elbel violated the Stored Communications Act, 18 U.S.C. § 2701, *et seq.,* which prohibits a person from "intentionally assess[ing] without authority" or "intentionally exceed[ing] authority to access" a facility "through which an electronic communication service is provided" and "thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in storage." 18 U.S.C. § 2701(a)(1)-(2).

Plaintiff has simply failed to plead any facts which could plausibly state a cause of action under this statute. Therefore, it is respectfully recommended that this claim be dismissed with prejudice and Plaintiff be denied leave to amend as it would be futile under these circumstances.

> c.   *Federal Communications Act, 47 U.S.C. § 605.*

In Paragraphs 124- 132 of the Second Amended Complaint, he alleges that Warden Elbel violated the Federal Communications Act, which prohibits a person from the unauthorized "divulg[ing] or publish[ing] of contents of "any interstate or foreign communication by wire or radio . . . except authorized channels of transmission or reception[.]"   47 U.S.C. § 605(a).

A cursory review of the Federal Communications Act reveals several sections which authorize a private cause of action, none of which are applicable here. Further, the private

remedy provided by the Federal Communications Act has been superseded by the Federal Wiretap Act. Therefore, it is respectfully recommended that this claim be dismissed with prejudice and Plaintiff be denied leave to amend as it would be futile under these circumstances.

d. *Fraud and Related Activity in Connection with Computers, 18 U.S.C. § 1030.*

In Paragraphs 133 through 141 of the Second Amended Complaint, Plaintiff alleges that Warden Elbel knowingly accessed a computer without authorization or exceeded authorized access in violation of 18 U.S.C. §1030. While the Act does authorize a private cause of action in limited circumstances, it is clear that none of the enumerated circumstances, which permit a private cause of action, are present in this case. *See* 18 U.S.C. § 1030(g). Therefore, it is respectfully recommended that this claim be dismissed with prejudice and Plaintiff be denied leave to amend as it would be futile under these circumstances.

e. *Alleged Violations of Pennsylvania Criminal Statutes*

In Paragraph 142 of the Second Amended Complaint, Plaintiff alleges that Warden Elbel violated 18 Pa. C.S.A. § 4106(a)(1)(iv), which criminalizes unauthorized use of an "access device." This statute has no application to the alleged improper conduct by Warden Elbel.

In Paragraph 143 of the Second Amended Complaint, Plaintiff alleges that Warden Elbel violated 18 Pa. C.S.A. § 4113(a), which makes it a crime to dispose of "property of the government or financial institution in a manner he knows is unlawful and involves substantial risk of law or detriment to the owner of the property." Again, this statute has no application to the facts of this case.

In Paragraph 144 of the Second Amended Complaint, Plaintiff alleges that Warden Elbel violated 18 Pa. C.S.A. § 4116(b)(1)-(2), (d1)(1)-(3), which makes it a crime to copy phonographs, tapes, or "other article on which sounds are recorded, with the intent to sell . . . or be used for profit through public performance." Again, this statute has no application to the facts of this case.

In Paragraph 145 of the Second Amended Complaint, Plaintiff alleges that Warden Elbel violated the Pennsylvania Wiretapping and Electronic Surveillance Act, 18 Pa. C.S.A. § 5703. This Act makes it a third degree felony for a person to "intentionally intercept[] . . . any wire, electronic or oral communication" or to "intentionally disclose[] . . . to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained by way of interception, or to intentionally use the contents of any intercepted communications;" . . . 18 Pa. C.S.A. §5703 (1) and (2).

The Court finds that Plaintiff has at least pleaded a plausible claim under the Pennsylvania Wiretapping and Electronic Surveillance Act. While discovery may reveal that the Act is inapplicable, at least at this juncture, this claim should be pursued through discovery. Therefore, it is respectfully recommended that Defendants' request to dismiss the Pennsylvania Wiretapping and Electronic Surveillance Act claim be denied.[7]

---

[7] Defendants also contend that Warden Elbel is a county official who is shielded by governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541, et seq. Plaintiff responds that since Warden Elbel's actions were intentional or "willful," immunity is not available to Warden Elbel. Because at this juncture of the litigation, the Court must view the facts of the complaint in the light most favorable to Plaintiff, the Court cannot decide the governmental immunity issue at this time.

In Paragraph 146 of the Second Amended Complaint, Plaintiff alleges that Warden Elbel violated 18 Pa C.S.A. § 5742(a)(1)(i-ii), (a)(2)(1-ii) and (a)(3), which prevents a person providing an "electronic communication service" or "remote computing service" to the public from divulging the contents of a communication stored by that service, subject to certain exceptions. Warden Elbel did not provide services "to the public" as contemplated by the meaning of this statute. Thus, the statute has no applicability to this lawsuit.

5.     <u>Claims for Common Law Civil Conspiracy</u>

In Paragraph 148 of Plaintiff's Second Amended Complaint, Plaintiff appears to be stating a state tort claim for civil conspiracy between Defendant Elbel and unnamed "others." Under Pennsylvania law, to recover for civil conspiracy, three elements must be proven: (i) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 660 (Pa. Super. Ct. 2000). Courts in Pennsylvania require that plaintiffs who allege civil conspiracy must plead some fact, "such as meetings, conferences, telephone calls or joint signatures" on relevant forms, or "allege facts inferring conspiratorial conduct." *Petula v. Mellody,* 588 A.3d 103, 107 (Pa. Cmwlth. Ct. 1991).

Devoid in the factual scenario pled in the instant Second Amended Complaint is any allegation of <u>plausible facts</u> from which one could infer conspiratorial conduct on the part of Defendant Elbel. Whitenight offers little more than a threadbare conspiracy cause of action with no factual corroboration that would suffice to state a claim. For this reason, it is respectfully recommended that Plaintiff's common law civil conspiracy claim be dismissed, with prejudice.

Whitenight has twice amended his claims in this lawsuit. Further amendment at this point is futile.

## III.    CONCLUSION

For the reasons stated above, it is respectfully recommended as follows:

1.    Defendants' request to dismiss Plaintiff's request for injunctive and declaratory relief be granted;

2.    Defendants' request to dismiss Plaintiff's request for monetary damages for mental anguish and emotional distress be granted;

3.    Defendants' request to dismiss Plaintiff's claims under the First, Sixth and Fourteenth Amendments as barred under *Heck* be granted;

4.    Defendants' request to dismiss Plaintiff's Fifth Amendment claims be granted;

5.    Defendants' request to dismiss any claims under Article 1, Section 8 of the Pennsylvania Constitution be granted;

6.    Defendants' request to dismiss the claims under the following federal statutes be granted: The Stored Communications Act, the Federal Communication Act, and Fraud and Related Activity in Connection with Computers; and

7.    Defendants' request to dismiss the claims under the following Pennsylvania criminal statutes be granted: 18 Pa. C.S.A. § 4106(a)(1)(iv); 18 Pa. C.S.A. § 4113(a) 18 Pa. C.S.A. § 4116(b)(1)-(2), (d1)(1)-(3); 18 Pa. C.S.A. § 5742(a)(1)(i-ii) and (a)(3).

It is further recommended that Defendants' request to dismiss Plaintiff's Fourth Amendment claims, The Federal Wiretap Act claim, and the Pennsylvania Wiretapping and Electronic Surveillance Act claim be denied. These claims should be pursued through discovery.

It is further recommended that pursuant to the authority granted courts by 28 U.S.C.§§ 1915(e)(2) and 1915A, Plaintiff's Equal Protection and Common Law Civil Conspiracy claims should be dismissed.

Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge.  In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 6(d) and 72(b)(2), and LCvR 72.D.2, Plaintiff, because he is a non-electronically registered party, may file objections to this Report and Recommendation by **April 27, 2017,** and Defendants, because they are electronically registered parties, may file objections by **April 24, 2017**.  The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).


Dated:  April 10, 2017                                   s/Cynthia Reed Eddy
                                                         Cynthia Reed Eddy
                                                         United States Magistrate Judge


cc:     Hon. Arthur J. Schwab
        (via ECF electronic notification)

        SHAWN WHITENIGHT
        LN8561
        175 Progress Dr.
        Waynesburg, PA 15370
        (via U.S. First Class Mail)

        Marie Milie Jones, Esquire
        JonesPassodelis, PLLC
        (via ECF electronic notification)

        Michael R. Lettrich
        JonesPassodelis PLLC
        (via ECF electronic notification)